[611 NYS2d 921]

In the Matter of JOSHUA LEDERBERG, a Suspended Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, May 23, 1994

## APPEARANCES OF COUNSEL

*Frank A. Finnerty, Jr.,* Syosset *(Robert P. Guido* of counsel), for petitioner.

*Perini & Hoerger,* Hauppauge, for respondent.

## OPINION OF THE COURT

Per Curiam.

In this proceeding, the respondent was charged with 11 allegations of professional misconduct. The Special Referee sustained 9 of the 11 charges. The petitioner Grievance Committee moved to confirm the report insofar as it sustained Charges Two, Three, Four, Five, Six, Seven, Eight, Nine, and Ten and disaffirm with respect to Charges One and Eleven. The respondent has not submitted any papers in opposition.

Charge One alleged that the respondent obstructed justice, and directed a witness to give false and misleading testimony before a tribunal. On or about December 9, 1988, Jose Rivera and Andrea J. DeJoy were arrested together on Motor Parkway in Islip by the Suffolk County Police Department. Rivera was charged with criminal possession of a controlled substance in the seventh degree, in violation of Penal Law § 220.03, a misdemeanor. DeJoy was charged with loitering in the first degree, in violation of Penal Law § 240.36, and resisting arrest, in violation of Penal Law § 205.30, both misdemeanors. At or about the time of his arrest, Rivera gave a signed, written statement to the police wherein he admitted his possession of the cocaine. Both Rivera and DeJoy retained the respondent as counsel to represent them in their respective criminal matters pending in the First District Court of Suffolk County.

On or about September 19, 1989, the respondent moved on behalf of DeJoy, seeking to: (1) dismiss the information, (2) dismiss the accusatory instrument, and (3) preclude the People from offering any evidence or statements for failure to properly and timely serve notice pursuant to CPL 710.30. By order dated November 13, 1989, Judge Sidney Mitchell granted the motion "without opposition" and dismissed the case against DeJoy. The grounds for dismissal were not specified.

On October 31, 1990, the prosecution of Rivera proceeded to a nonjury trial before the Honorable Armand Araujo. On that day, the respondent called DeJoy to the stand as a witness on behalf of Rivera. After having been placed under oath, and in response to the following questions asked of her by the respondent, DeJoy gave false testimony consisting of the following false answers, which are italicized:

"Q. On December 9, 1988, between 10 and 11 o'clock in the evening, were you in the parking lot of the Holiday Inn, located in Hauppauge?

"A. Yes.

"Q. Were you in a vehicle with Jose Rivera?

"A. Yes.

"Q. Did you have anything in your possession at that time?

"A. Yes.

"Q. What did you have?

"A. *Cocaine.*

"Q. And was this cocaine yours?

"A. *Yes.*

"Q. Did Hose *[sic]* Rivera have any cocaine at that time?

"A. *No.*

"Q. Did he possess any cocaine at that time?

"A. *No.*

"Q. Did he smoke any, or snort any cocaine at that time?

"A. *No.*

"Q. Where did you get the cocaine?

"A. *From someone in the bar.*

"Q. Were you using it in the car or about to use it in the car, when the police came?

"A. About to.

"Q. Did you get in a big fight with the policeman?

"A. Yes, I did.

"Q. Just to make it crystal clear, the cocaine was never— Jose, he never had a packet of it, never threw a packet on the floor, or anything like that?

"A. (No response.)

"Q. This was all yours?

"A. *Yes.*"

The aforesaid false testimony given by DeJoy was made and offered at the specific request, urging, solicitation, and command of the respondent, with knowledge of its falsity. By reason of the foregoing, the respondent has violated Code of Professional Responsibility DR 1-102 (A) (1), (2), (3), (4), (5), and (7) (22 NYCRR 1200.3), and Code of Professional Responsibility DR 7-102 (A) (4), (6) and (8) (22 NYCRR 1200.33).

Charge Two alleged that the aforesaid false testimony given by DeJoy was made and offered with the respondent's knowledge as to its falsity. By reason of the foregoing, the respondent has violated Code of Professional Responsibility DR 1-102 (A) (1), (4), (5), and (7) (22 NYCRR 1200.3), and Code of

Professional Responsibility DR 7-102 (A) (4), (6), and (8) (22 NYCRR 1200.33).

Charge Three alleged that the respondent knew or should have known that the false testimony given by DeJoy was false and misleading. By reason of the foregoing, the respondent has violated Code of Professional Responsibility DR 1-102 (A) (1), (5) and (7) (22 NYCRR 1200.3) and Code of Professional Responsibility DR 7-102 (A) (6) (22 NYCRR 1200.33).

Charge Four alleged that the respondent failed to reveal to the court the fraud perpetrated upon it by DeJoy in the nature and substance of her false testimony. By reason of the foregoing, the respondent has violated Code of Professional Responsibility DR 7-102 (B) (2) (22 NYCRR 1200.33).

Charge Five alleged that the respondent failed to promptly call upon DeJoy to rectify the fraud perpetrated upon the court in the nature and substance of her false testimony. By reason of the foregoing, the respondent has violated Code of Professional Responsibility DR 7-102 (B) (1) (22 NYCRR 1200.33).

Charge Six alleged that in allowing DeJoy to give the aforestated false testimony, the respondent exposed her to arrest, prosecution, and incarceration. By reason of the foregoing, the respondent has violated Code of Professional Responsibility DR 7-101 (A) (3) (22 NYCRR 1200.32).

Charge Eight alleged that in or about January 1991 the Office of the Suffolk County District Attorney presented evidence to a Grand Jury for the County of Suffolk concerning the conduct which later formed the basis of the respondent's indictment, as described in Charge Nine. On January 17, 1991, the respondent voluntarily appeared before the Grand Jury and testified under a waiver of immunity. After having been placed under oath, and in response to the following questions, the respondent did give false and misleading testimony consisting of the following false answers, which are italicized:

"Q. Mr. Lederberg, on November second, it was a Friday, did she go to your office in Babylon?

"A. I don't remember where but if your question is did we have conversation or conversations, the answer is yes. Whether it was in my office or in the hallway or on the telephone, I don't remember. But I did. She was arrested, I was representing her.

"Q. Did she ever tell you that she lied on the witness stand?

"A. *No.* I don't ask that question. I don't want to know.

"Q. But did she come in and tell you that she ever lied on the witness stand?

"A. *No, no.*

"Q. Did she ever tell you that she wanted to go forward to the D.A.'s office and tell them that she lied?

"A. *No.* * * *

"Q. Did you ever acknowledge to Andrea DeJoy that you had used her to get Jose off?

"A. No. But I did acknowledge to Andrea DeJoy that she was a witness and was very helpful to Jose but, obviously, he didn't get off because he was convicted.

"Q. Did you ever tell Andrea DeJoy that she was taking a little bit of the rap for him?

"A. *"No.* * * *

"Q. Did you ever tell Andrea DeJoy to lie at your request?

"A. *I never have told anybody to lie at my request.* In thirty years, I have never requested anybody to do anything. That's not my request. You got to understand, I'm not the defendant. I'm the lawyer.

"Q. Did you ever tell Andrea, in substance, that if her new charge for Criminal Possession of a Controlled Substance ever went to trial, you would have Jose come in and testify at the trial that the shit was his?

"A. *No.* I told Andrea that there would never be a trial, that the matter was going to be dismissed because it's been dismissed once and, in this country, you can't accuse somebody twice of doing the same thing and I told her the District Attorney's Office knows it, the police know it and they're looking to do something else here and on motion, it's going to be dismissed. It has to be dismissed. That's what I told her and I still think it's going to be dismissed and I think you know it's going to be dismissed. * * *

"Q. Did you ever have a conversation to the following effect: Did Andrea ever tell you: I lied at your request. And did you answer: But does that make you any less guilty? And did she then reply: But, I mean, your lawyer is supposed to tell you what to do, right? And did you then say: Okay, but if your lawyer told you to lie, you're the one who's perjuring yourself. Did she then say: I know but—excuse me—I know but you did tell me to lie. Did you answer: Therefore. Did she then say: I did. Did you answer: Okay, therefore. Did she say: I'm screwed now. And did you answer: Unless we can get you out of it, yes,

but we'll get you out of it. Did you ever have that conversation?

"A. Not in that entirety. I did have a conversation, she did say she was screwed and I did say it would be dismissed. *I never told her to lie.* I never tell anybody what to say. I am very careful about not finding out whether—

"Q. And she never told you that she lied?

"A. *I wouldn't listen to any kind of conversation whether she told the truth or not.*

"Q. Did she ever come in at any time and tell you that she had lied under oath?

"A. *No.* She might have attempted to but I won't listen to that. I don't know what she attempted to do. I told her she has already been acquitted, there can't be a second time and that's going to be the end of it. She's got to be patient for a couple of months while it goes through the system."

By reason of the foregoing, the respondent has violated Code of Professional Responsibility DR 1-102 (A) (1), (4), (5), and (7) (22 NYCRR 1200.3).

Charge Nine alleged that the respondent has engaged in illegal conduct and been convicted of a misdemeanor under the laws of the State of New York. On or about January 28, 1991, an indictment was filed in County Court, Suffolk County, charging the respondent with nine counts of criminal conduct as follows:

Count One: perjury in the first degree

Count Two: perjury in the first degree

Count Three: perjury in the first degree

Count Four: perjury in the first degree

Count Five: perjury in the first degree

Count Six: misconduct by attorneys

Count Seven: perjury in the first degree

Count Eight: perjury in the first degree

Count Nine: perjury in the first degree.

On March 9, 1992, in the Supreme Court, before the Honorable Michael F. Mullen, the respondent entered a voluntary plea of guilty to the crime of misconduct by attorneys, a violation of Judiciary Law § 487, as charged in Count Six of the indictment, in full satisfaction of the indictment. At that time, the respondent was sentenced to a conditional discharge for a period of one year, with the special condition that the

respondent pay forthwith the amount of $10,000 to the office of the Suffolk County District Attorney. By reason of the foregoing, the respondent has violated Judiciary Law § 90 (4) (d), the rules of this Court (22 NYCRR 691.7), and Code of Professional Responsibility DR 1-102 (A) (1), (3), (4), (5), and (7) (22 NYCRR 1200.3).

Charge Ten alleged that the respondent failed to file, within 30 days after his plea and sentence, the record of his conviction with the Appellate Division of the Supreme Court. By his actions, the respondent violated Judiciary Law § 90 (4) (c).

After reviewing all of the evidence adduced, we find that the Special Referee properly sustained Charges Two, Three, Four, Five, Six, Eight, Nine, and Ten and properly failed to sustain Charge Eleven. We further conclude that Charge One should have been sustained and Charge Seven was improperly sustained. In sustaining Charges One, Two, Three, and Eight, we note that these charges are established by the transcript of a taped conversation between the respondent and DeJoy which was introduced as evidence at the disciplinary proceeding. This tape was made by the office of the Suffolk County District Attorney, after engaging the cooperation of DeJoy. The substance of the tape reveals that the respondent not only knew, at the time it was offered, that DeJoy's testimony was false, but that DeJoy committed perjury at the respondent's request. Accordingly, the petitioner's motion to confirm in part and disaffirm in part is granted to the extent that Charges One to Six and Eight to Ten are sustained.

In determining an appropriate measure of discipline to impose, we have taken into consideration the fact that the respondent has no prior history with the Grievance Committee. The respondent is, nevertheless, guilty of serious professional misconduct which strikes at the very heart of the judicial system. Under the circumstances, his disbarment is warranted.

MANGANO, P. J., THOMPSON, BRACKEN, SULLIVAN and LAWRENCE, JJ., concur.

Ordered that the petitioner's motion to confirm in part and disaffirm in part the report of the Special Referee is granted to the extent that Charges One through Six and Eight through Ten are sustained, and the motion is otherwise denied; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Joshua Lederberg, is disbarred

and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that Joshua Lederberg shall continue to comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys *(see,* 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, Joshua Lederberg is commanded to continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.